UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NELSON GARCIA, JR.,

    Petitioner,

v.                                     Case No. 20-CV-336

BRIAN FOSTER,

    Respondent.

## DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Nelson Garcia, Jr. seeks federal relief under 28 U.S.C. § 2254 from his state court conviction for robbery of a financial institution. Garcia alleges that his Sixth Amendment rights were violated when he was placed in a post-arrest police lineup without the representation of counsel and when the trial judge denied him the right to represent himself at trial. For the reasons stated below, the petition for writ of habeas corpus is granted.

## BACKGROUND

Garcia challenges his judgment of conviction for robbery of a financial institution in Milwaukee County Circuit Court Case No. 2012CF104. (Habeas Petition at 2, Docket # 1.) A man robbed a Milwaukee bank on December 27, 2011. (*State v. Garcia*, Appeal No. 2016AP1276 (Wis. Ct. App. Apr. 10, 2018), Ex. 6, Docket # 6-15.) The man gave the teller, D.L., a handwritten note informing her that this was a robbery and instructing her to put money into a bag he gave her. (*Id.* ¶ 2.) She did so, and he left the bank. (*Id.*) A second teller observed the robbery from nearby, and the robbery was also caught on surveillance video.

(*Id.*) Following the release of the video to the media, police received several calls identifying the man in the video as Garcia. (*Id.* ¶ 3.) Garcia was arrested on January 2, 2012. (*Id.*) Within 48 hours of his arrest, on January 4, 2012, a Milwaukee County Court Commissioner reviewed a form known as a "CR-215," titled "Probable Cause Statement and Judicial Determination." (*Id.* ¶ 4.) The form, prepared by police, contained a statement alleging that officers had received several calls identifying Garcia in the surveillance video; that the name led officers to find a booking photo of Garcia, which an officer also matched to the surveillance video; that the two people who lived in the house where Garcia was arrested told police they had known Garcia for years and identified Garcia as the man in the surveillance video; and that Garcia's girlfriend also told police that Garcia was the man in the surveillance video. (*Id.*) The statement was signed by a detective and the court commissioner stated that he found probable cause to believe Garcia committed the offense and set bail at $50,000.00. (*Id.*)

Several hours after Garcia's bail was set, police conducted an in-person lineup with the two tellers. (*Id.* ¶ 5.) After viewing the lineup twice, D.L. positively identified Garcia as the robber, while the other teller said that she was not positive. (*Id.*) Garcia made his initial appearance on January 7, 2012. (*Id.* ¶ 7.) The attorney who appeared with Garcia at the preliminary hearing ten days later was the first of six attorneys to represent Garcia over the next three years and six months, during which time the case continued through three judicial rotations. (*Id.* ¶¶ 8–9.) Garcia filed a motion to proceed *pro se* in May 2015. (*Id.* ¶ 16.) The motion was heard at the final pretrial hearing on June 29, 2015, two weeks before

2

the July 13, 2015 start of trial. (Transcript of June 29, 2015 Final Pretrial Conference, Answer, Ex. 38, Docket # 6-38.) The trial court conducted a lengthy colloquy with Garcia in which the court confirmed that Garcia understood both his rights to counsel and to represent himself; that he understood the charges against him; that he was 37 years old, completed some college, was able to read and write in English, and regularly read case law and religious materials; that he wrote his motion to proceed *pro se* himself; that he suffered from no medical or emotional problems; that he was not pressured or under the influence of drugs, alcohol, or medications; and that he understood that a lawyer would know more about the law and court proceedings than him. (*Id.* at 8–12.)

The trial court asked Garcia whether he wanted to give up his right to an attorney and exercise his right to represent himself, to which Garcia responded, "Yes, I do." (*Id.* at 13.) The prosecutor then expressed concern over whether Garcia would act appropriately in front of the jury because Garcia had made a number of lengthy statements in prior hearings, to which the court responded that he would have Garcia's current counsel serve as standby counsel and stated that "anyone who is a regular in this courtroom knows that I certainly have no problem with cutting people off if they are acting inappropriately or arguing beyond what the law calls for." (*Id.* at 13–14.)

The trial court then stated that although he believed Garcia was making a mistake, "I don't see anything in the written materials or the colloquy that would indicate that he is not competent to make this decision. While it may be a bad decision. This is, indeed, what he

3

wants." (*Id.* at 16.) The court's next exchange with Garcia underpins the issue under habeas review:

| | |
|---|---|
| THE COURT: | But I am inclined, if this is, indeed, what you want, would be to allow you to represent yourself, and I would appoint Mr. Bihler from this point on on behalf of the County at forty dollars an hour as standby counsel in this case. Is that, indeed, what you want? |
| THE DEFENDANT: | Well, Your Honor, I have prepared a statement. |
| THE COURT: | Well, I don't need your statement. It's a simple question. And this highlights what Ms. Kronforst indicated; and that is, you're going to follow the same rules that the attorneys follow in my courtroom. And when I ask you questions that involves a yes or no answer, that's what I expect. I have indicated to you that under these circumstances, I am inclined to grant your request, because I don't think under the law, I have any choice under this set of facts. But I don't think it's a wise decision. But if it's what you want, I will do this. So, do you want me to allow you to proceed pro se as indicated, yes or no? |
| THE DEFENDANT: | Yes. |
| THE COURT: | All right. Well. The defendant appears to have knowingly and voluntarily waived his right to counsel based on the record before this Court. It appears that the defendant is making a deliberate choice. He is aware of the difficulties and disadvantages of proceeding without a lawyer. And he is aware of the seriousness |

4

| | |
|---|---|
| | of the charges and what could happen to him if convicted. I think actually I may have misspoke on the penalty. It's actually forty (40) years. And it's twenty-five (25) in and fifteen (15) out and a maximum fine of one hundred thousand dollars ($100,000.00). Do you understand that, Mr. Garcia? |
| THE DEFENDANT: | Yes. |
| THE COURT: | All right. And does that change your decision in any way? |
| THE DEFENDANT: | There are several things that you are incorrect about. |
| THE COURT: | Yes or no? Does that change your decision in any way? |
| THE DEFENDANT: | Well, it changes my decision with regards to Attorney Bihler being the standby counsel. I never requested him to be my standby counsel. |
| THE COURT: | Well, he's the one you are going to get. Do you want to represent yourself with Mr. Bihler as standby counsel, or do you want Mr. Bihler to continue as counsel for you? Those are your two choices. Pick one. |
| THE DEFENDANT: | If I understand, correctly, Your Honor – |
| THE COURT: | Stop. Your choices are to represent yourself, or you can have Mr. Bihler represent you. If you decide to represent yourself, then Mr. Bihler will serve as your standby – |
| THE DEFENDANT: | You are not allowing me to speak, Your Honor. |

5

| THE COURT: | You don't get to. Well, this has convinced me right here that there is something going on with Mr. Garcia. Under these circumstances, I can't believe that because this would make a mockery out of the system. He won't answer the Court's questions. I don't know how we could proceed with him as counsel. So, I think that now, Mr. Garcia, himself, has made a sort of record that would, perhaps, require me to deny his request. |
|---|---|

(*Id.* at 17–20.) The trial court further noted for the record that Garcia's demeanor had been "argumentative" and that the deputy "actually got up from his chair. He was standing next to him." (*Id.* at 21.) Thus, the trial court denied Garcia's motion "based on Mr. Garcia's behavior." (*Id.* at 22.) Garcia proceeded to trial represented by Attorney Bihler and the jury convicted him. (Docket # 6-15 at ¶ 19.)

Garcia appealed his judgment of conviction, arguing, as relevant here, that he was denied his Sixth Amendment right to counsel during the post-arrest lineup and was denied his Sixth Amendment right to represent himself at trial. (*Id.* ¶¶ 20–31, 43–49.) The court of appeals rejected both arguments and affirmed the judgment of conviction. (*Id.* ¶ 50.) Garcia petitioned the Wisconsin Supreme Court for review and the petition was granted (Order Granting Petition for Review, Answer, Ex. 18, Docket # 6-18); however, following briefing and oral argument, an equally divided court summarily affirmed the Wisconsin Court of Appeals' decision in a *per curiam* opinion, (*State v. Garcia*, No. 2016AP1276 (Wis. S. Ct. Apr. 19, 2019), Ex. 22, Docket # 6-22). Garcia timely filed a petition for a writ of habeas corpus in this Court on March 3, 2020. (Docket # 1.)

## STANDARD OF REVIEW

Garcia's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). A state court decision is an

7

"unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

In his habeas petition, Garcia asserts that his Sixth Amendment rights were violated on two grounds: (1) violation of his right to counsel at the post-arrest lineup (ground one) and violation of his right to self-representation (ground two). I will address each ground in turn.

8

1. *Right to Counsel at Post-Arrest Lineup*

Garcia was arrested for robbery of a financial institution, specifically a bank. Within forty-eight hours of his arrest and while Garcia was sitting in jail, a court commissioner found probable cause that Garcia committed the robbery and set bail against him. Hours later, Garcia was put into a police line-up. Garcia asserts that his Sixth Amendment right to counsel was violated when he appeared in the police lineup without appointed counsel. On appeal, the Wisconsin Court of Appeals addressed whether, under the United States Supreme Court's decision in *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191 (2008), Garcia's Sixth Amendment right to counsel attached at the point when the court commissioner signed the CR-215 form finding probable cause and setting bail. (Docket # 6-15 at ¶ 20.) The court of appeals found that it did not. On habeas review, Garcia argues that the court of appeals' decision was contrary to and an unreasonable application of the United States Supreme Court's decisions in *United States v. Wade*, 388 U.S. 218 (1967), *Gilbert v. California*, 388 U.S. 263 (1967), and *Rothgery*.

The Sixth Amendment right to counsel attaches at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. *Rothgery*, 554 U.S. at 194 (citing *Brewer v. Williams*, 430 U.S. 387, 398–99 (1977)). The question before the Court in *Rothgery* was whether attachment of the right to counsel also required that a prosecutor be aware of or be involved in that initial proceeding. *Id.* at 194–95. Before the Court was a Texas procedure known as an article 15.17 hearing which combined the Fourth Amendment probable cause

9

determination with the setting of bail. *Id.* at 195. In *Rothgery*, the arresting officer submitted a sworn "Affidavit Of Probable Cause" that described the facts supporting the arrest and "charge[d] that . . . Rothgery . . . commit[ted] the offense of unlawful possession of a firearm by a felon—3rd degree felony [Tex. Penal Code Ann. § 46.04]." *Id.* at 196. After reviewing the affidavit, the magistrate "determined that probable cause existed for the arrest" and informed Rothgery of the accusation, set his bail at $5,000.00, and committed him to jail, from which he was released after posting a surety bond. *Id.* at 195.

The Supreme Court found that the right to counsel did attach at the Texas article 15.17 hearing despite the absence of the prosecutor because "Rothgery was taken before a magistrate, informed of the formal accusation against him, and sent to jail until he posted bail." *Id.* at 199. The Court concluded that a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel. *Id.* at 213.

Citing *Rothgery*, the Wisconsin Court of Appeals found that the Supreme Court articulated three requirements before the right to counsel attached: (1) a personal appearance; (2) a formal accusation; and (3) restrictions on liberty. (Docket # 6-15 at ¶ 25 (quoting *Rothgery*, 554 U.S. at 194).) The court of appeals found Garcia's situation distinguishable from *Rothgery* for two primary reasons. First, unlike in *Rothgery* where the defendant was present at the article 15.17 hearing, Garcia was not present when the probable cause determination was made. (*Id.* ¶ 27.) The court of appeals found that *Rothgery*

10

requires a personal appearance for the Sixth Amendment right to counsel to attach. (*Id.*) Second, the court of appeals found that the document at issue in *Rothgery* stated that the defendant was "charged" whereas the "probable cause document did not accuse or charge Garcia but merely, as required, set forth to a neutral magistrate the probable cause for the *arrest*." (Docket # 6-15 at ¶ 28 (emphasis in original).)

The Wisconsin Court of Appeals' application of *Rothgery* to Garcia's case was unreasonable. To understand why, we must begin with *Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991), cited by the Wisconsin Court of Appeals. In *Riverside*, the Supreme Court found that the Fourth Amendment ordinarily requires a judicial determination of probable cause within 48 hours of a person's arrest. *See id.* at 58. The *Riverside* Court acknowledged that each state has its own pretrial system, and left it up to the individual states to "integrate prompt probable cause determinations into their differing systems of pretrial procedures." *Id.* at 53. Although the *Rothgery* Court never mentions *Riverside* in its decision, reviewing the Fifth Circuit's decision, *see Rothgery v. Gillespie County*, 491 F.3d 293, 300 (5th Cir. 2007), it is clear that Texas' article 15.17 hearing was designed primarily to satisfy the requirement of *Riverside*.

In Garcia's case, the court of appeals acknowledges that the post-arrest probable cause determination (the CR-215 form) is Milwaukee County's mechanism for satisfying the requirements of *Riverside.* (Docket # 6-15 at ¶ 21.) Thus, both the Texas 15.17 hearing and the Milwaukee County probable cause determination (the CR-215 form) are mechanisms to comply with *Riverside*. Milwaukee County's all-paper procedure, though arguably less

11

formal and undoubtedly less time-consuming than Texas' procedure in *Rothgery*, produces the same results—A judicial officer reviewed a sworn statement outlining the factual basis for the charges against the arrestee, the judicial officer found probable cause, the judicial officer established bail for the arrestee, and the arrestee was informed of the charges against him (as the form is distributed to the arrested person). (Docket # 6-3 at 2.)

Given the functional equivalence of the Texas procedure and the Milwaukee County procedure acknowledged by the Wisconsin Court of Appeals, it was unreasonable for the Wisconsin Court of Appeals to determine that one triggered the right to counsel while the other did not. In other words, it was unreasonable for the Wisconsin Court of Appeals to determine that an arrested person in Texas subject to a *Riverside* proceeding triggered the federal constitutional right to counsel while an arrested person in Wisconsin subject to a *Riverside* proceeding does not. The *Rothgery* Court did not create a rule where a defendant's constitutional rights vary from jurisdiction to jurisdiction based upon the state's individual procedures. Indeed, in *Riverside*, the Court recognized the diversity of the states' pretrial procedures. Moreover, as one judge articulated in the context of a criminal case, substance rather than form should determine constitutional rights. *See United States v. West*, No. 08-CR-157, 2009 WL 5217976, at *9 (E.D. Wis. Mar. 3, 2009) ("A conclusion regarding a defendant's Sixth Amendment right to counsel based on form, i.e. the physical appearance before a judicial officer, rather than substance, i.e. a judicial officer finding probable cause, fixing bail, and the arrestee being informed of the preliminary charges against him, would lay the groundwork for absurd results that are antithetical to constitutional aims.").

12

The court of appeals distinguished Garcia's case, stating that: "*Rothgery* did not involve a scenario where no personal appearance was made, and it gives no indication that it contemplates such an application." (Docket # 6-15 at ¶ 27.) But in *Rothgery*, it was unnecessary for the Court to specifically address whether physical appearance was constitutionally significant as the defendant in that case was present and the legal question was the constitutional significance of the prosecutor's involvement in the Texas proceeding. While the *Rothgery* Court did not address in person proceedings (as in Texas) versus paper proceedings (as in Milwaukee County), as stated above, the *Riverside* Court was explicit that the states are allowed flexibility in establishing *Riverside* procedures. Given the flexibility granted to the states to comply with *Riverside*, it was unreasonable for the court of appeals to add an in-person requirement which the Supreme Court did not impose.

The unreasonableness of the court of appeals' decision becomes even clearer when evaluating its second ground for distinguishing Garcia's case from *Rothgery*. The court of appeals found that the sworn affidavit in *Rothgery* said that the defendant was "charged" with the offense, while the CR-215 form in Garcia's case states that there is "probable cause to believe that the arrested person committed the offense listed above." (Docket # 6-15 at ¶ 12.) The court of appeals concluded that because the CR-215 form does not use the word "charged," there was no "formal accusation" in accordance with *Rothgery*. This conclusion is clearly unreasonable.

In *Rothgery*, the Court states that the right to counsel attaches when "a defendant is told of the formal accusation against him." 554 U.S. at 194. It explained that an "accusation

13

filed with a judicial officer is sufficiently formal, and the government's commitment to prosecute it sufficiently concrete, when the accusation prompts arraignment and restrictions on the accused's liberty to facilitate the prosecution." *Id.* at 207. While Milwaukee County's form does not use the specific word "charged" like Texas' does, again, it serves the exact same purpose. First, the form memorializes that the judicial officer has reviewed the police officer's accusation and has found probable cause that the person has committed the alleged crime. Second, the form documents that the judicial officer has set bail. Finally, because the form is then distributed to the sheriff, the jail facility, the district attorney, and the arrested person, it also informs the arrestee of the accusation against him and the restriction on his freedom. Under these circumstances, it was unreasonable for the court of appeals to determine that the application of *Rothgery* turned on the presence or absence of the word "charged." For these reasons, Garcia is entitled to habeas relief on this ground.

2. *Right to Self-Representation*

Garcia alleges that the court of appeals' determination that he was not unconstitutionally denied the right to self-representation was based on an unreasonable determination of the facts in light of the evidence presented, and was both contrary to and an unreasonable application of the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1975).

In *Faretta*, the Supreme Court held that the Sixth Amendment guarantees criminal defendants the right to self-representation. 422 U.S. at 818–32. However, while the right to represent oneself is "fundamental," it is not absolute. *Martinez v. Ct. of Appeal of California,*

14

*Fourth App. Dist.*, 528 U.S. 152, 161 (2000). The *Faretta* Court found that in order to represent himself, the accused must knowingly and intelligently relinquish his right to counsel. 422 U.S. at 835. The Court stated that although "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (internal citation omitted). A trial judge may also terminate self-representation or appoint "standby counsel," even over the defendant's objection, if necessary. *Martinez*, 528 U.S. at 162 (citing *Faretta*, 422 U.S. at 834 n.46). In *Faretta*, the Court stated that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834 n.46. In so stating, the *Faretta* Court cited *Illinois v. Allen*, 397 U.S. 337 (1970), a case in which the Court held that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.* at 343. At bottom, the Supreme Court has found that "[e]ven at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez*, 528 U.S. at 162.

In Garcia's case, the Wisconsin Court of Appeals acknowledged *Faretta*'s requirement that a defendant knowingly and voluntarily waive the right to counsel and

15

found that this right to proceed *pro se* must be balanced against the "State's interest in avoiding any interference with the orderly administration of justice and in preserving the integrity of the trial process." (Docket # 6-15 at ¶ 44.) Garcia argued that the trial court deprived him of his right to proceed *pro se* because his conduct did not satisfy the legal standard for doing so. (*Id.* ¶ 46.) Citing to *Allen*, Garcia argued that his conduct must be "so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on." (*Id.*) The court of appeals disagreed, finding that because *Allen* discussed the standard under which a defendant could be constitutionally removed from his trial, the "*Allen* test is not the applicable test here." (*Id.*) Rather, the court of appeals found that the test is "whether the trial court '[became] convinced that the orderly and efficient progression of the case [was] being frustrated.'" (*Id.* (quoting *State v. Cummings*, 199 Wis. 2d 721, 752–53 n.15, 546 N.W.2d 406 (1996).)

But the *Allen* test is the proper standard for the court of appeals to apply in this case. The *Faretta* Court, in stating that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct," 422 U.S. at 834 n.46, cited to *Allen* in support of the statement. Again, the *Allen* Court found that a defendant could lose his right to be present at trial if, after being warned by the judge, he continues to act in a manner "so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. at 343. The respondent argues that the Wisconsin Supreme Court in *Cummings* set the same standard as the Supreme Court in *Faretta* and *Allen*, stating that there is "no meaningful difference between

16

whether the conduct is characterized as 'serious and obstructionist misconduct'; 'so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom'; or 'disruptive and defiant.'" (Resp. Br. at 34, Docket # 11.)

While it is true that the *Cummings* Court does cite *Allen* in finding that the defendant forfeited his right to counsel based on his "egregious" tactics, 199 Wis. 2d at 754–55, this portion of *Cummings* is not what the court of appeals in Garcia's case relied on in establishing the requisite test. Rather, the court of appeals cites to a footnote from *Cummings*, in which, in response to a point made by the dissent, the court cites *State v. Woods*, 144 Wis. 2d 710, 424 N.W.2d 730 (Ct. App. 1988) for the proposition that "the triggering event for forfeiture is when the 'court becomes convinced that the orderly and efficient progression of the case [is] being frustrated . . . ." *Cummings*, 199 Wis. 2d 754 n.15 (quoting *Woods*, 144 Wis. 2d at 715).

In *Woods*, the Wisconsin Court of Appeals addressed whether the trial court forced the defendant to proceed *pro se* without obtaining a proper waiver of counsel. *Woods*, 144 Wis. 2d at 714. This case, however, had the unique fact that the defendant admitted he was neither willing to proceed *pro se* nor was he willing to waive the right to counsel. *Id.* Thus, after numerous and successive attorneys were unable to represent the defendant to his satisfaction, "the trial court became convinced that the orderly and efficient progression of this case was being frustrated by [defendant's] repeated dissatisfaction with his successive attorneys." *Id.* at 715. Then the court, "in the proper exercise of its discretion, required the

17

case to go to trial without further adjournment," concluding that defendant waived the right to counsel through his actions. *Id.* at 715–16.

Contrary to the respondent's assertion that the court of appeals reconciled *Cummings*, *Allen*, and *Faretta*, the court of appeals explicitly found that the *Allen* test did not apply in this case and articulated a different standard. (Docket # 6-15 at ¶ 46.) And this different standard is contrary to *Faretta* and *Allen*. The Supreme Court in *Faretta* and *Allen* found that a defendant could lose certain aspects of his Sixth Amendment rights by "deliberately engag[ing] in serious and obstructionist misconduct," 422 U.S. at 834 n.46, or behaving in a manner "so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom," 397 U.S. at 343. The court of appeals' test, on the contrary—"whether the trial court became convinced that the orderly and efficient progression of the case was being frustrated"—is a far cry from the conduct articulated by the Supreme Court. The difference between the two tests is not a matter of semantics or fealty to magical words. The Supreme Court articulates a standard that acknowledges the fact that a constitutional right should not be taken away lightly, but only in the face of a defendant "deliberately" engaging in "serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46. The court of appeals' test, on the contrary, focuses ultimately on the trial judge's assessment of whether the "orderly and efficient" progression of the case is being "frustrated." This is a decidedly lower standard then one requiring a defendant's deliberate, serious obstructionist actions to serve as a waiver of his Sixth Amendment right to self-representation. This lower standard was thus contrary to *Faretta*.

18

The respondent argues that even if Garcia's behavior at the final pretrial conference alone "may not have been enough to warrant the trial court's conclusion that he forfeited his right to self-representation," the record "as a whole" establishes that Garcia acted with intent to delay and disrupt the proceedings since March 2012. (Resp. Br. at 36–37.) But again, the court of appeals, in considering the record "as a whole" and finding that Garcia had "disregard for the constraints of the courtroom and [had] insistence on making long prepared statements asserting various unfounded legal arguments and accusations," did not rely on *Faretta* or *Allen*, but considered these facts through the lens of a lower standard, contrary to the standard articulated in *Faretta*. Because I find that the Wisconsin Court of Appeals' decision was contrary to, and an unreasonable application of, the Supreme Court's precedent in *Faretta* and *Allen*, Garcia is also entitled to habeas relief on this ground.

## CONCLUSION

The Sixth Amendment guarantees defendants both the right to counsel and the right to self-representation. In this case, Garcia participated in a post-arrest police line up without the assistance of counsel, contrary to his Sixth Amendment rights. The Supreme Court in *Rothgery* found that the right to counsel attached at Texas' *Riverside* proceeding. The Wisconsin Court of Appeals' determination that the right to counsel did not attach at Milwaukee County's *Riverside* proceeding simply because Milwaukee County uses an all-paper system unreasonably applies Supreme Court precedent.

Furthermore, once Garcia proceeded to trial, he articulated his desire to proceed *pro se*, as is his right under the Sixth Amendment. In denying his request, the Wisconsin Court

19

of Appeals articulated a standard of waiver through actions that contravened the Supreme Court's pronouncement in *Faretta* that the right to self-representation should not be taken away absent a defendant's deliberate engagement in serious and obstructionist misconduct. For all of these reasons, the writ must issue.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **GRANTED**, and that petitioner be released within 90 days of the date of this decision unless the State of Wisconsin decides to retry him. The Clerk of Court shall enter judgment accordingly.

In the event the respondent files a timely notice of appeal, the judgment will be stayed pending disposition of that appeal.

Dated at Milwaukee, Wisconsin this 9th day of November, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

20